LUCY BEQUETTE, Respondent, v. ST. LOUIS IRON
MOUNTAIN & SOUTHERN RAILWAY COM-
PANY, Appellant.

86  601<br>89  362

### St. Louis Court of Appeals, October 23, 1900.

1. **Damages: NEGLIGENCE: MASTER AND SERVANT: EVI-
DENCE: DEFINITIONS: "WIPER" OF ENGINES, HIS DUTIES:
"ENGINE HOSTLER," DUTIES OF.** To move an engine of defend-
ant railroad company over the side tracks or switches for the con-
venience of other employees engaged in making up trains, was a
service wholly foreign and disconnected with the duties imposed by
defendant on the "wiper" of engines, and was specifically entrusted
by it to a person having the qualifications of an engineer and termed
"engine hostler."

2. **———: ———: ———: ———: RECORD.** And as there is no
substantial evidence in the record that this latter service was ever
performed by the wiper of the engine in question at any other time,
than the occasion of the accident for which this action is brought,
it can not be said that on this particular occasion he was acting in
the course of his employment by defendant, and as it is not claimed
that he then acted under the direction of his immediate superior, the
"engine hostler," or any other person authorized to add to the duties
which the defendant had, employed him to perform, it follows that
this movement of the engine at the request of two brakemen engaged
in making up another train was an act outside and beyond the scope
of the agency entrusted to him, and wholly unauthorized by defend-
ant. For mishaps so occurring, causing damage, the principal in-
curs no liability.

3. **———: ———: FELLOW SERVANTS: STATUTORY CON-
STRUCTION OF FELLOW SERVANT ACT: RAILROAD COR-
PORATIONS.** By the language of the Act of February, 1897 (Re-
vised Statutes 1899, section 2873), a railroad corporation operating
in this State is made liable to its agents or servants for all dam-
ages sustained *"while engaged in the work of operating such rail-
road which are caused by the negligence of any other agent or serv-
ant of such railroad."*

3. ——: ——: ——: DEFINITIONS OF AGENT OR SERV-
ANT. And by the use of the words "agent or servant" of such cor-
poration in defining who must be the authors of the injury in order
to give a right of action, the Legislature meant co-employees acting
in the course of their employment.

4. ——: ——: ——. And it is not true that one is the servant
of another outside of the scope of his authority as such.

Appeal from Jefferson Circuit Court.—*Hon. Frank R.
Dearing,* Judge.

REVERSED.

*Martin L. Clardy* and *Louis F. Dinning* for appellant.

(1) The court erred in refusing to sustain the instruc-
tion asked by defendant at the close of plaintiff's evidence, in
the nature of a demurrer thereto.   There was no evidence to
authorize a submission of this case to the jury.   Plaintiff's
cause of action is grounded upon the following averment:
"Defendant's employee carelessly and negligently, and with-
out any right to do so, and while attempting to serve defend-
ant in the service for which he was employed, caused an
engine and tender to be moved upon the track, upon which
plaintff's husband was standing, and knocked him down, so
that the engine and tender ran upon him, and so crushed him
that he was killed thereby."   Plaintiff charges that the em-
ployee of defendant moved the engine without any right to do
so, and while attempting to serve defendant in the service for
which he was employed.   It is not alleged that the defendant
was employed to move the engine, or that this act was within
the scope of his employment, but the contrary is expressly
averred.   Plaintiff offered and read in evidence from defend-
ant company's rules, paragraph 13, of section 27, entitled,
"Engineers and Firemen," as follows: "Every engineer

must personally run and handle the engine in his charge at all times while on the road, or about the shops or in station yards, excepting that experienced firemen may be allowed to handle engines about the stations and yards, when they are competent to do so." (2) The liability of the master for the acts of the servant rests upon the condition whether or not the act of the servant was in the course of his employment. "His act must be in the line of his employment, and in furtherance of the master's business; ....... at the time when the act complained of was done he must not only have been acting for him, but also must have been authorized by him either expressly or impliedly, to do the act." Wood, Mast. and Serv. (2 Ed.), pp. 525, 527. (3) "Beyond the scope of his employment the servant is as much a stranger to his master as any third person. The master is only responsible so long as the servant can be said to be doing the act, in the doing of which he is guilty of negligence, in the course of his employment." Marrier v. Railroad, 17 N. W. Rep. 952; Foster v. Bank, 17 Mass. 479; Snyder v. Railroad, 60 Mo. 413; Sherman v. Railroad, 72 Mo. 63; Cousins v. Railroad, 66 Mo. 575; Stringer v. Railroad, 96 Mo. 299.

*M. C. Brown* and *A. R. Taylor* for respondent.

### On Motion for a Re-hearing.

(1) The court seems to have entirely overlooked the evidence in making up its statement of fact, on which to found its opinion. The question overlooked and duly presented by counsel for respondent, in their brief, is this: If a master intrusts a servant with possession and control of a subject-matter, and the servant exceeds his instruction in an attempt to serve his master, as far as another person is concerned, injured by the act in excess of authority, the master is held.

The opinion of the majority of the court is in direct conflict with the well-settled law of this State as is shown by the decisions of the Supreme Court in the following cases: Douglas v. Stephens, 18 Mo. 367. The principle established that where a servant injures another by a negligent act whilst furthering the business of the master, the master is liable. But, if for a purpose of his own does an injury to another, the master is not held. "When the servant acts, in the course of his employment, although outside of his instructions (precisely what was the case on defendant's theory), the master will be held responsible for his acts." Garretzen v. Duenckel, 50 Mo. 104-112; Harreman v. Stowe, 57 Mo. 98; Mound City Co. v. Colon, 92 Mo. 229. (2) It is a cruel irony of fate to have to call the attention of this court to the case of Whitehead v. Railroad, 99 Mo. 270, where counsel for appellant obtained from the Supreme Court of the State the following lucid declaration of the law applicable to that case as also to the one at bar, per Black, J.: "The rule asserted on all hands is that the master is civilly liable for the negligence or wrongful act of his agent, when done in the course of the agent's employment, even though the master may have prohibited the agent from doing the act of which complaint is made." Now, the most that can be contended for here is, that the wiper was prohibited from moving the engine at the time in question. It is undisputed that he was in charge of the engine, and empowered to move it on some occasions. (3) The court will observe its mistake of fact when it asserts in its opinion "It was not his duty to move the engine about the yard and switches. The only authority of the wiper to move the engine was an inferable one to alter its position when it should be necessary to extinguish fires communicated to the cross-ties." We have shown above from the testimony of Heitzman that it was the wiper's duty to move the engine when the trucks were on fire.

BOND, J.—The plaintiff had judgment for $2,500 as damages for the death of her husband. The defendant appealed and assigns for error the refusal of the court to sustain its demurrer to the entire evidence.

The record shows that the scene of the accident for which this suit is brought was Bismark, a station on the line of the defendant's railroad, from which it ran a local freight train north to the city of St. Louis, and where it had provided two side tracks east of its main track for switching purposes and making up trains. The time of the accident was the eleventh of December, 1897. It was caused by the wheels of an engine passing over the body of the deceased, who was then a brakeman in the employ of defendant and had been coupling cars which were to constitute the local freight train, after doing which he left the track on which the coupling had been made and traversed a distance of about eight feet to the eastern track, where in some unexplained manner he was caught under the wheels of an engine and tender passing south on said eastern track for the purpose of making room for the movement of the cars which had been attached to the local freight train. The engine in question was moved by a "wiper" at the request of two brakemen, who were engaged in making up the local freight train. The duties of this "wiper" were to wipe the engine, put out its fires, remove the ashes and cinders, and provide it with coal, water and sand, so that it should be ready for use. It was not his duty to move the engine about the yards and switches. The only authority of the "wiper" to move the engine was an inferable one, to alter its position when that should be *necessary* to extinguish fires communicated to the cross-ties by his work in cleansing the engine. All other movements of the engine over the switches and yards were required to be made by the "engine hostler," who was an engineer employed for that purpose by defendant and given authority over the "wiper." Prior to the accident the work of

the "wiper" on the engine in question had been completed and it was stationary on the eastern track, steamed up and ready for use, and the "wiper" in question was watching it and another engine also in his charge on the same track. The "engine hostler" was in the south end of the yard at the time. There is no evidence that he was requested to move the engine, nor that he gave any direction so to do to the "wiper." The foregoing is the substance of the evidence in this record touching the nature and circumstances of the transaction which caused the death of plaintiff's husband.

1. Our conclusion is that the learned circuit judge erred in refusing to sustain the demurrer to the evidence interposed by defendant at the close of the evidence produced on the trial. To move the engine a few feet to prevent the burning of the cross-ties of the track if they became ignited in the process of the performance of the duties of the "wiper" in putting out fires of the engine and dumping cinders and ashes therefrom, was a service naturally incident to what might happen in the full discharge of the duties imposed on him by defendant. On the other hand, to move the engine over the side tracks or switches for the *convenience* of other employees engaged in making up trains, was a service wholly foreign and disconnected with the duties imposed by defendant on the "wiper" of engines, and was specifically intrusted by it to a person having the qualifications of an engineer and termed "engine hostler." As there is no substantial evidence in this record that this latter service was ever performed by the "wiper" of the engine in question at any other time than the occasion of the accident for which this action is brought, it can not be said that on this particular occasion he was acting in the course of his employment by defendant, and as it is not claimed that he then acted under the direction of his immediate superior, the "engine hostler," or any other person authorized to add to the duties which the defendant had employed

him to perform, it follows that his movement of the engine at the request of two brakemen engaged in making up another train was an act outside and beyond the scope of the agency intrusted to him, and wholly unathorized by defendant. For mishaps so occurring, causing damage, the principal incurs no liability. These principles are elementary and need not be further elaborated.

2. It is insisted by the learned counsel for respondent that the Fellow Servant Act authorizes a recovery in this case, even if it be conceded that the "wiper" was not acting within the course of his employment when the injury was occasioned. This motion is not in accord with the petition, nor with the position assumed on the trial, the language of the petition being that the injury complained of was caused by the act of a servant of defendant in the attempted discharge of *"the service for which he was employed."* The act invoked to sustain the point now made by respondent is to-wit: "That every railroad corporation owning or operating a railroad in this State shall be liable for all damages sustained by any agent or servant thereof while engaged in the work of operating such railroad by reason of the negligence of any other agent or servant thereof. Provided, that it may be shown in defense that the person injured was guilty of negligence contributing as a proximate cause to produce the injury." R. S. 1899, sec. 2873. Prior to the adoption of the foregoing section (Act of February, 1897), the common-law rules governing the liability of the principal of master for the torts or negligences of his agent or servant, existed in full vigor in this State. By that system of laws a person could only incur responsibility for his own acts or those done by his authority, express or implied. When the primary responsibility of parties for their own acts was extended so as to cover the acts of others, it was upon the sole ground that the immediate actors were the representatives as agents or servants of the party sought to be charged,

who was consequently deemed to have done those things himself which he did through another *qui facit per alium facit per se.* Upon this maxim alone the doctrine of *respondeat superior* was builded, which defined the responsibility of the principal or master as to third parties as embracing all acts done in the course of an employment given to his agents or servants. The only limitation fixed to this responsibility by the common law was that which exempted the principal or master from responsibility to his own agents or servants for injuries caused by a fellow servant engaged in the same grade and department of labor, the ground of this exception being that the risk of such injuries was assumed by taking an employment to which it was naturally incident. This exception constituted the only distinction between the liability of the principal or master to his own employees and to strangers, or the world at large. The trend of legislation in England and many of the States evinces a purpose to do away with this distinction in some measure and as to certain employments, and in pursuance of that design, notably, the States of Iowa and Kansas, have enacted statutes similar to the one above quoted. With this knowledge of the object in the mind of the Legislature we turn to the foregoing act to discover the method and extent of its accomplishment. By the language of the act a railroad corporation operating in this State is made liable to its agents or servants for all damages sustained *"while engaged in the work of operating such railroad which are caused by the negligence of any other agent or servant of such railroad."* The meaning of these terms is simple, clear and free from any ambiguity whatever. First, they confine the right of redress to an action against a railroad corporation. Second, they limit the cause of action to injuries sustained while the sufferer was engaged in the work of operating such railroad. Third, they hinge the right of recovery upon a showing of negligence on the part of another "agent or servant" of such

railroad corporation.   By the use of the words "agent or serv-
ant of such corporation," in defining who must be the authors
of the injury in order to give a right of action, the Legislature
necessarily meant co-employees acting in the course of their
employment.   It did not use these words as merely matter of
personal description of certain individuals.   For the rule is
universal that it is only in the relation of *service* that one can
be the agent or servant of another, and outside the scope of
that limitation there is no privity or responsibility on the part
of the master for the action of the other.   In short, it is not
true that one is the servant of another outside of the scope of his
authority as such.   On this subject the general rule formu-
lated by the decisions and approved by the text-writers is as
follows:   "Beyond the scope of his employment the servant is
as much a stranger to his master as any third person, and the
act of the servant not done in the execution of the service for
which he was engaged can not be regarded as the act of the
master."   Little Miami Railroad Co. v. Wetmore, 19 Ohio
State 110.   It is apparent that the Legislature simply used
the words "agent or servant" in defining the causes of the
damages recoverable, in their true and proper sense and mean-
ing as defined by law.   It is plain, therefore, that a fair and
natural interpretation of the act under review recognizes the
just principle that it is only for his own wrongs or those done
in the course of an employment intrusted to others, that the
master or principal can be held liable to any one.   The view
of the learned counsel for respondent that by the Fellow Serv-
ant Act the Legislature intended to fasten liability on a rail-
road corporation in favor of its injured employees beyond that
which it would owe to strangers, and resting solely upon an
injury inflicted by a person not at the time acting within the
scope of any employment by the railroad company, nor by its
authority, express or implied, is in our opinion wholly illog-

ical and opposed to the rights of person and property which it is the design of government to protect from unlawful invasion. No such purpose is expressed by the terms in which the Legislature has seen fit to couch its will on this subject, and can not be imputed to it, without an unjustifiable reflection upon its wisdom and high purpose as a body of lawmakers.

Our conclusion is that under the state of this record there is no view of the law or facts upon which the recovery had by plaintiff can be upheld. The judgment is therefore reversed. Judge *Bland* concurs; Judge *Biggs* dissents.

## DISSENTING OPINION.

BIGGS, J.—The judgment of reversal in this cause is predicated on the assumed or ascertained fact that the "wiper" in moving the engine acted outside of the scope of his employment. Under our fellow servant law as I read and interpret it, this is an immaterial inquiry. To make the defendant liable under the statute, it was only necessary to find that the deceased at the time of the accident was a servant of the defendant and engaged in operating a train, and that the "wiper" was also in the employ of the defendant, and that the doing of the alleged negligent act by him was in the prosecution of his master's business. These facts are indisputable under the record.

Now, let us examine the statute. It reads: "Every railroad corporation owning or operating a railroad in this State shall be liable for all damages sustained by any *agent or servant* thereof while engaged in the work of *operating* such railroad by reason of the negligence of any other *agent* or *servant* thereof" (Laws 1897, sec. 1, page 96). It will be seen that the statute fixes the *status* of the injured servant. He must have been at the time he received his injuries engaged in *operating* the railroad. The *status* of the offending servant is

not fixed. All that the statute requires is that he must be a *servant* of the defendant. To make him a servant he must have been in the employ of the defendant in some capacity, and his alleged negligent act must have been in the prosecution or accomplishment of his master's business. The undisputed facts bring the present case precisely within the statute. Unquestionably, the deceased was a servant of the defendant and was killed while engaged in operating one of its trains. The "wiper" was also in the employ of the defendant, and his alleged negligent act was in the prosecution of the defendant's business. This made him a *servant* of the defendant as to that particular act, and if he performed it negligently, the defendant is liable under the plain letter of the statute. A narrower construction I do not think permissible, for it would tend to defeat the law which was intended to make railroad companies liable for all injuries received by its servants while operating its trains through the negligence of a fellow servant. As to such persons, the act of a co-employee, although done in the performance of work not imposed, or against the express orders of the master, must be held to be a negligent act, provided, of course, it was not an act entirely independent of the business.

I also dissent from the conclusions reached by my associates on the question of fact upon which their decision is based. However, it would serve no good purpose for me to enter into an extended discussion of the evidence bearing on the question. Suffice it to say that there was testimony tending to prove that it was necessary to move the engine; that the "wiper" was left in sole charge of it; that in the performance of his customary duties he was permitted to move it about the yard, when necessary, to protect it from burning cinders, or for the purpose of filling the tank with water, or procuring a fresh supply of coal. Having given him (who is assumed to be an incompetent person to run an engine) limited authority

to move it, the defendant must be held liable for its abuse. As said by Mr. Wood, "he (the Master) has set the wrong in motion and must abide the consequences as against innocent parties." Wood on Master and Servant (2 Ed.), sec. 309.